UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In Re<br>AMERICANWEST BANCORPORATION,<br><br>                  DEBTOR.<br>_____<br>CAPPELLO CAPITAL CORP.,<br><br>              Plaintiff,<br><br><br>AMERICANWEST BANK, et al.,<br><br>            Defendants. | NO. CV-11-0449-LRS<br><br>CASE NO. 10-6097-PCW11<br><br>(Adv. Proc. No. 11-80323-PCW)<br><br><br>**ORDER ADOPTING REPORT**<br>**AND RECOMMENDATION RE MOTON**<br>**FOR ATTORNEYS' FEES** |

Pursuant to the District Court's Order Referring AmericanWest Bank's Motion for Award of Attorney's Fees for Report and Recommendation entered on March 29, 2013 (DC Case No. 11-CV-0449-LRS, ECF No. 58), the Bankruptcy Court entered a Report and Recommendation Re: AmericanWest Bank's Motion For Attorney's Fees on June 17, 2013 (ECF No. 256), recommending AmericanWest Bank's Motion for Award of Attorney's Fees be granted in part and denied in part. Adversary No. 11-80323-PCW, Dkt. 286. Both Cappello Capital Corp. ("Cappello") and AmericanWest Bank ("the Bank") filed objections to the Bankruptcy Court's Report and Recommendation Re Attorney's Fees. The Court's analysis follows.

/ / /

ORDER ~ 1

**DISCUSSION**

**A.   Cappello's Objections**

Cappello raises four objections to the Report and Recommendation. The Court will briefly discuss each objection and the Bank's responses thereto.

> **1.   The Bankruptcy Court Erred by Failing to Apply the Provision of the Engagement Agreement Limiting Cappello's Total Liability to the Bank to $275,000.**

Cappello asserts that because the Engagement Agreement expressly limits Cappello's potential liability to the Bank to the amount of fees Cappello received under the Engagement Agreement -- namely, $275,000 -- any recovery by the Bank is necessarily limited to $275,000. Cappello rests its entire argument on the use of the term "notwithstanding" appearing in the Engagement Agreement.  The provision containing the "notwithstanding" language reads:

> Notwithstanding any other provisions hereunder, in no event shall the Indemnified Persons be liable to the Company for an amount greater, in the aggregate, than the fees actually received by the Advisor hereunder.

Adversary No. 11-80323-PCW, Dkt. 287 at 4.

The Bank argues that Cappello misreads the Engagement Agreement. Specifically, the Bank argues that this clause is part of an indemnification provision and such provisions do not apply to claims between parties to a contract related to performance of the contract itself.  ECF No. 68 at 3-4.  The "notwithstanding" language Cappello relies on limits the total amount that the Bank can seek to recover with respect to any indemnification claim.  The Bank asserts that contrary to

1   what Cappello argues, that language has no connection to the general

2   attorney fee provision found in the Engagement Agreement.

3       The Court rejects Cappello's arguments for the same reasons set

4   forth in the Bankruptcy Court's Report and Recommendation. Cappello's

5   argument ignores the plain language of the attorney fee provision in

6   the contract. Cappello attempts to import a limitation into the attorney

7   fee provision from an entirely separate portion of the contract, which

8   is not proper contract interpretation and fails as a matter of law. This

9   Court finds, as the Bankruptcy Court did, that there is no ambiguity in

10  the contract. If a dispute arises between the parties to the contract,

11  the prevailing party is entitled to its attorney's fees without a cap as

12  Cappello advocates. Therefore, this objection is overruled.

13      **2.   The Bankruptcy Court Erred by Concluding That The Bank Was A**
        **Prevailing Party, Even Though Neither the Bank nor Cappello Won**
14      **on Their Own Affirmative Claims Against Each Other.**

15      Cappello argues that there was no prevailing party. Cappello

16  supports its theory by arguing that the Bank formally dropped its

17  affirmative compulsory counterclaims on April 8, 2013. Therefore, while

18  Cappello did not win on Cappello's own claims, the Bank similarly did not

19  win on the Bank's own claims. In that event, neither party is the

20  prevailing party urges Cappello.

21      The Court finds Cappello's argument unconvincing. In order to

22  determine who has prevailed, for the purposes of awarding costs, the

23  trial court must look at the lawsuit as a whole to determine which party

24  was the "winner" and which the "loser." *Landis v. Hannaford Bros. Co.*,

25  754 A.2d 958 (Me. 2000). Clearly, the Bank obtained an unequivocal win

26  and dismissal of the case on summary judgment. This Court interprets

ORDER ~ 3

"prevailing" party or "successful" party as one who prevails in a "significant" respect in the litigation. The Bank's voluntarily dismissed counterclaims, that Cappello wrongly relies upon to undermine the Bank's prevailing party status, were merely defensive claims and as such, certainly do not result in the Bank being deemed a "loser" in this lawsuit. The Court agrees with the Bankruptcy Court's analysis regarding this objection. The Court concludes that the Bank is indeed a prevailing party in the instant litigation.

    **3.** **The Bankruptcy Court Erred By Using Hourly Rates That Exceed Customary Rates in the Eastern District of Washington for Similar Work.**

Cappello argues that the standard regarding the hourly rate to be applied when determining reasonable attorneys' fees to be paid by an opposing party is absolutely clear: the rates should be "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).

Cappello further asserts that the Bankruptcy Court at first recognized this standard, asking the parties to supplement the record with evidence of appropriate Spokane rates, but in its Recommendation, departed from this standard granting the Bank full hourly rates charged by its counsel which were much higher than Spokane rates. Cappello concludes that the Bankruptcy Court erred by basing its decision on the fact that the case originated in California and was then transferred to Washington by the Bank.

ORDER ~ 4

1    Defendant AmericanWest Bank asserts that the Bankruptcy Court was

2  correct in its analysis.

3    The Court, too, wholeheartedly agrees with the Bankruptcy Court's

4  analysis regarding this objection.   As the Bankruptcy Court correctly

5  observed:

> The California statute and the contract between the
> parties both allow "reasonable" attorney's fees. The
> question of reasonableness has various components,
> including the reasonableness of the hourly rate,
> amount of hours, and quality of service.
> …
> The present controversy does not involve a statutory
> award of attorney's fees, but rather is a private
> contract dispute between two very financially
> sophisticated parties, each of which selected
> counsel and agreed to pay certain hourly rates for
> the legal services. Those hourly rates are
> comparable. Although the court exercises its
> discretion, under such circumstances, some weight
> should be given to the parties' decision to employ
> counsel at a particular hourly rate.
>
> The hourly rate requested is reasonable. Any
> justification to require local rates be applied does
> not appear relevant to this controversy. This case
> was commenced in a state court in Los Angeles,
> California. AWB promptly removed the case to the
> federal District Court sitting in Los Angeles,
> California, and at that time, apparently had the
> goal of litigating the dispute in this court.
> Certainly at that point in the litigation, it was
> uncertain whether venue would be in a state court or
> a federal district court or a bankruptcy court. It
> was uncertain whether the litigation would proceed
> in Los Angeles, California, or Spokane, Washington.
> The determination of proper venue was a lengthy and
> hard fought battle. Even assuming local rates would
> ordinarily apply to this case, it would be unfair,
> inefficient, and unwise to limit either party to
> local rates under such circumstances.

Report and Recommendation at 8, 11-12 (Dkt. 286).

ORDER ~ 5

An examination of the procedural history is helpful. In an apparent attempt to avoid litigation in the Bankruptcy Court in the Eastern District of Washington, Cappello filed this action in the Superior Court of the State of California for the County of Los Angeles on February 2, 2011. The Bank removed the case to the United States District Court for the Central District of California on March 3, 2011. Cappello filed a motion to remand to the California state court, which was denied. The Bank asked the Central District of California court to transfer the case to the United States District Court for the Eastern District of Washington, with its ultimate destination to be the Eastern District of Washington Bankruptcy Court, where the bankruptcy was pending. Cappello vigorously objected to the transfer, but the Bank prevailed, and the case was transferred to the Eastern District of Washington by order entered July 28, 2011. After transfer to the District Court for Eastern District of Washington, the district court on August 22, 2011, transferred and remanded the case to the Bankruptcy Court. It is also noted that Cappello sued Sandler along with the Bank. Sandler had to retain counsel, a law firm in Los Angeles, California, to join in the venue dispute and defend itself in the common lawsuit. The Bank was obligated to indemnify Sandler for the fees Sandler incurred in its successful defense of the $11.4 million claim against it. Although the Bank sought an award of the fees and costs it was required to pay for Sandler's defense (in the amount of $1,183,816.45), the Bankruptcy Court rejected the Bank's claim. The Court finds that Cappello's objection is without

merit regarding the use of non-Spokane hourly rates used in determining the award for this highly litigious matter.

### 4.    The Bankruptcy Court Erred by Failing to Reduce the Hours Set Forth in the Invoices Despite Block Billing.

Next Cappello argues that in fee applications, courts greatly disapprove of requests supported by block billing because block billing makes it difficult, if not impossible, for a court to assess the extent to which hours were reasonably billed. Cappello asserts that the Bank has not met its burden of proving the reasonableness of its hours. Cappello then argues that the Bankruptcy Court went as far as agreeing that the block billing method prevented an accurate calculation of the fees to be excluded, yet failed to make any reduction for block billing. Cappello concludes the Bankruptcy Court should have reduced, by at least 20%, all hours for which the Bank submitted block-billing support.

The Bank explains that the subject invoices contained detailed descriptions of every task performed by each billing professional every day. Additionally, the Bank points out, the invoices did not allocate tenths of an hour to each task. The invoices were reviewed by the Bank's General Counsel, with some being adjusted based on discussions between General Counsel and the firm's billing partner, and the invoices were paid.

This Court finds that the Bankruptcy Court's analysis of the block billing that occurred is correct and did take into consideration Cappello's arguments. The Bankruptcy Court aptly stated:

> The fact that block billing occurred does not prevent a conclusion that the fees requested are reasonable and no across-the-board percentage reduction should occur. Reductions in the amount requested for specific services are noted herein and arise not from the fact of block billing, but from a lack of entitlement to the fees.

Report and Recommendation at 22 (Dkt. 286).

The Court finds that Cappello's objection is without merit regarding the block billing invoices, which contained sufficient detail for the opposing party and the Bankruptcy Court to determine the reasonableness of the fees being charged.

**B.   The Bank's Objections**

**1.   The Bankruptcy Court Improperly Found Against Awarding Sandler Fees that the Bank Had to Pay.**

The Bank objects to the Bankruptcy Court's rejection of its request to be awarded the fees incurred by Sandler O'Neill & Partners ("Sandler"), which the Bank was required to pay. In the Report and Recommendations, the Bankruptcy Court categorically disallowed the Sandler fees and costs, in the amount of $1,183,816.45, as of the date of the motion for attorney's fees.  The Bank complains that Cappello certainly knew that it would be forced to pay for Sandler's defense.  The Bank further argues that Cappello's claim against Sandler was bogus. Cappello had no viable claim against Sandler, and that was the conclusion of the Bankruptcy Court on summary judgment (a conclusion accepted by the District Court). Report & Recommendation Re Summary Judgment at 17-24 (Dkt. 233). The Bank argues that Cappello greatly increased the cost of

ORDER ~ 8

the litigation by suing Sandler and these defense costs are contemplated by the Attorneys Fee Provision, and should be part of the award.

More specifically, the Bank argues that the fees incurred for Sandler's defense constitute a part of "all reasonable attorney's fees . . . of the prevailing party . . . " or, in the alternative, "related expenses" in the "legal dispute between the Company [i.e., the Bank] and the Advisor [i.e., Cappello]," for which Cappello is obligated to reimburse the Bank.

Cappello responds that the Bankruptcy Court correctly determined that attorneys' fees incurred by Sandler could not be recovered by the Bank. Cappello asserts that the attorneys' fees provision in the Engagement Agreement between Cappello and the Bank does not provide for recovery of attorneys' fees or expenses incurred by any prevailing party other than the parties to the Engagement Agreement. Cappello quotes the provision from the Engagement Letter it argues is applicable:

> In the event of any legal dispute between the [Bank or its then-holding company, AmericanWest Bancorporation] and [Cappello], all reasonable attorney's fees and related expenses of the prevailing party shall be paid by the other party (which shall include an award of interest at 10% per annum and recovery of costs by the prevailing party).

Engagement Agreement at 8 (ECF No. 68-Exh. A).

The Court reluctantly agrees with Cappello and the Bankruptcy Court on this issue because Sandler does not have a contract with Cappello. Cappello's lengthy and failed two state multicourt litigation strategy clearly caused the Bank to incur fees paid on Sandler's behalf.

ORDER ~ 9

Reasonable minds could conclude that this was intended by Cappello to force the Bank to settle with Cappello. While equitable fairness would support an award of the Sandler fees to the Bank, the facts and the law do not permit this court to reach that result. The Bank's objection is overruled and the Bankruptcy Court's recommendation is found to be legally correct.

**2.   The Bankruptcy Court Improperly Found Against Awarding SKBHC/Starbuck's Fees that the Bank Had to Pay.**

The Bank's second objection is essentially the same as its first objection, except with respect to different parties. The Bank complains that in the Report and Recommendations, the Bankruptcy Court categorically disallowed the SKBHB/Starbuck fees and costs, in the amount of $388,601.80. Report and Recommendation at 30 (Dkt. 286). In this objection, the Bank says that Cappello should have to pay for the legal fees and expenses of third parties SKBHC and Starbuck. For the same reasoning with respect to the Sandler fees, this Court finds the Bankruptcy Court's conclusion is adopted as Cappello had no contract with SKBHC and Starbuck. The contractual provision that the Bank relies upon does not provide that either Cappello or the Bank would be entitled to reimbursement for fees and related expenses incurred by a third party, but paid by Cappello or the Bank.

**3.   The Bankruptcy Court Improperly Calculated Interest Accrual**

The Bank argues that as drafted by Cappello, the Attorney Fee Provision provided that the prevailing party's fee award "shall include an award of interest at 10% per annum." The Bank contends that interest

accrues from the date of payment of each fees or costs invoice.  This is the methodology used by the Bank in making its calculation of interest due.

Cappello agrees with the Bankruptcy Court's conclusion that the Engagement Agreement does not provide for prejudgment interest.  More specifically, Cappello argues that the Attorney Fee Provision language means that interest should run from the date of the "award." Further, Cappello asserts, until a final judgment is issued as to the amount of fees to be paid, there is no award, or "final judgment or decision," as properly contemplated by the Bankruptcy Court.

The Court finds the Bankruptcy Court's determination on the issue of interest accrual is logical and correct.  The Bankruptcy Court states, in pertinent part:

> "Cappello's duty to pay [the Bank's] attorney's fees in this dispute rests upon a finding that [the Bank] is the prevailing party in the dispute. The duty also rests upon a finding as to the reasonable amount of the fees. Until those findings are made, no duty arises. The liability is unliquidated. In other words, the fees and costs must be "awarded."

Report and Recommendation at 18 (Dkt. 286).

The Court finds that the Bank is not entitled to interest requested in the amount of $300,104,58, as a final award had not been issued at the time of the Bank's request.  Therefore, the Court overrules the Bank's objection relating to prejudgment interest.

## CONCLUSION

The objections made by both parties are rejected for the reasons above and for the reasons set forth in the Bankruptcy Court's Report

ORDER ~ 11

and Recommendation.  Therefore, the court fully **ADOPTS** the Report and Recommendation Re: AmericanWest Bank's Motion For Award of Attorney's Fees (Dkt. 286).  Accordingly,

     **IT IS ORDERED** that:

     1.   Defendant AmericanWest Bank's Motion for Award of Attorney's Fees, **ECF No. 39,** are **GRANTED in part and DENIED in part.**  The final award will be issued following a review of the Bank's anticipated petition for supplemental fees referenced in ECF 70.

     2.   Defendant AmericanWest Bank's Motion For Leave to File Excess Pages, **ECF No. 62,** is **GRANTED.**

     **DATED** this   4th   day of October, 2013.

                              *s/Lonny R. Suko*
                    _____
                              LONNY R. SUKO
                    United States District Judge